The matter at issue is a question of regulatory interpretation, specifically what is required for a manifestly different outcome under the provisions of 38 CFR 20.1403. The decision below required that Mr. Smith, in order to get relief from the 1996 decision, was required to show as a manifestly different outcome that he would have prevailed on the issue of service connection and the service connection would have been awarded. But the issue of service connection in 1995 was not before the board. What was before the board was the question of well-roundedness. Fortunately, that is no longer a statutory requirement, but until 2000 it was a statutory requirement. And it was then a threshold question that determined whether or not the veteran would or would not be entitled to the benefit of the VA's duty to assist. In other words, if there was not a well-rounded claim presented, then the veteran would not get the benefit of the duty to assist. But isn't it ultimately a question of service connection? That's the benefit you wanted. And manifestly different is not new language. No, it's not new language. You get the benefit you sought and you don't. But in 1995, the manifestly different outcome language did not appear in the regulatory provision for revision. The regulatory provision simply described what constituted under 38 CFR 3.103A, what constituted a clear and unmistakable error. in the version that was created when BVA or board Q was provided was written differently and included the manifestly different outcome language, but it did not refer to an award of benefits. And to address your first question as to what was before the court or board, all that was before the board was entitlement to the duty to assist. The issue of service connection, although denied, was denied on a basis that the claim presented was not well-rounded. But the only claim presented was a claim for service connection. That is correct, Your Honor. Is that the question then as to what is meant by outcome determinative? No, Your Honor, because in the context of clear and unmistakable error, the intent is to provide a revision when a clear and unmistakable error was made. It's an exception. It's a rare exception. It's not another opportunity for a second appeal. It's an exception. No, Your Honor, and Mr. Smith did not get an adjudication of his claim for service connection on the merits. That merit determination was cut short because the board found that his claim was not well-rounded, and as a not well-rounded claim, he didn't get the benefit of assistance. But he never appealed that ruling, correct, that it was not well-rounded? No, Your Honor, he did not, and in 1995, because there was judicial review, he could have made that appeal. Therefore, he had to go back under the board Q statute and regulation to seek revision of the prior board decision, which was presented to the board, not to the regional office, because they were the adjudicator. But the point of Q is to put the veteran in the position that they would have been but for the error, and but for the error in denying or in the board's finding that his claim was not well-rounded, he would have got the benefit of the duty to assist. And in the board's decision, on review of the board decision, that board decision made a favorable finding of fact that there was an equal amount of evidence, positive and negative, that he had a current disability. But your argument that, well, Q gives him the opportunity to put him in the position he would have been in had the error not been made, which sounds like that would apply to any sort of procedural misstep along the way, from start to finish in the processing of a claim, and I don't think that's what it's all about. That's not the circumstances here, and we are asking this court to review the interpretation relied upon by the veterans court that there had to be an award of service connection when service connection could not have been awarded as a matter of law because the claim was determined by the board not to be well-rounded. That was the legal determination, and at that time, under King v. Brown, it's cited in the board's decision at Appendix 28, the applicable law then was is that a determination of whether a claim is well-rounded is legal in nature. Therefore, we are talking about a threshold legal determination for essentially the right to have an adjudication on the merits. He did not get an adjudication on the merits, and therefore, we believe that review under the correct interpretation would have examined only whether or not the legal determination of well-roundedness was a clear and unmistakable error. We did not receive that below because the veterans court determined that the scope of 20.1403 was more narrow and required something that doesn't exist in the regulation. There is no reference in the terms of the regulation to an award of benefits. The regulation simply refers to a clear and unmistakable error. The clear and unmistakable error here was in the legal determination on well-roundedness. What about the regulation's reference to manifestly change the outcome at the time it was made? I take it that your view is that outcome could include just not necessarily the ultimate outcome of the case. That is whether he's entitled to the benefits or not, but would include interlocutory considerations like whether he's entitled to continue on with his case. That's your argument, right? That's correct, Your Honor. The outcome in the context of VA law really only had two of those, if you will, threshold issues. In the first instance, it was well-groundedness until that was removed from the statute by Congress. In the other alternative, it was the question of reopening, which this court concluded was a question of jurisdiction. It was a legal determination as to jurisdiction. If the issue before the board was either well-groundedness or new and material evidence to reopen and those were adversely decided, that was the question. That was the outcome of that board decision. There was no outcome on the merits of the claim for entitlement to service connection, so how could he possibly show that the board had made a clear and unmistakable error on a matter they never reached? Do you think this argument has been considered before, for example, in Bustos or Yates? No, Your Honor. In the first place, in Bustos, all that existed was the regulatory provision for ROQ. What the court said in Bustos was that the case law had interpreted what that phrase means, and it was focused on the question of manifestly different outcome, but not on this question as to what that outcome is or what is being referred to. Right now, the provisions of 3.105 do include this manifestly different outcome language, but in 1995, they did not. He did get service connection. Do you want an earlier date? Well, we want the opportunity to litigate the issue of entitlement to service connection from the date of his original claim, if granted that would result in an earlier victim. That's correct, Your Honor. Unless there's further questions, I'll reserve the balance of my time. Thank you very much, Your Honor. Ms. Kruse. Yes, Your Honor. May it please the court. First of all, this court does not possess jurisdiction over this appeal because it does not involve any question of regulatory interpretation. The Veterans Court merely applied the law to the facts of the case. When the Veterans Court was laying out what it was doing in this matter, it was not elaborating or expounding upon the meaning of the regulation. It was simply using its own precedent and synthesizing it and explaining how the rules on Q would determine the outcome of that case, and so it was applying the law to the facts. It was not attempting to create a new legal standard, and it certainly was not creating a higher legal standard. But in any event, if this court takes jurisdiction, the arguments made here are contrary to this court's precedent, as laid out in Bustos, Cook, the non-reversed part of Hire, and Yates. It's also contrary to the regulation at 20.1403D, which is that a failure of the secretary to fulfill the duty to assist is not Q. So the court has already determined these issues. In particular, the Veterans Court here did not establish any new rule of law, but the idea that in order to prevail on a Q case, the veteran must show that but for the error, he would have obtained a different outcome, here in this case required to show that the error would have led to a service connection. The error here- Why is outcome? What, in your view, is the reason why the word outcome there? When you say outcome, change the outcome in the case, that means the ultimate outcome. Well, I mean, that comes directly from the regulation at 20.1403A. I mean, it describes Q as it's a type of error to which reasonable minds could not differ, that the result would have been manifestly different but for the error. And then at 20.1403C, it says that the error must have manifestly changed the outcome. And, I mean, this court's case law explains that it's not simply any kind of error. It is not just that a law was incorrectly applied. It's that the outcome would have been different. The ultimate outcome. The ultimate outcome. I mean, there's no other type of result that a veteran is seeking in this matter other than to obtain a benefit. Obviously, the words service connection are not in the regulation because not every case is about service connection. I mean, some claims of Q could be to get a higher rating or to get an earlier effective date. There could be different types of claimed outcome determinative errors. So the regulation isn't going to say service connection, but in a case where there was a denial of service connection, as occurred here in 1996, the ultimate outcome, the result, would be to reverse that and obtain service connection. So I think this court has been clear that simply saying that the error would have led to the provision of assistance is not an outcome determinative error. I mean, this is very clear in Cook. I think Cook says that to say that an error would be the failure to provide claims assistance would require getting rid of the outcome determinative part of Q. And in Cook, you know, the court denies doing this because Q must be an outcome determinative error. And also, Q must be based on the record and existence of the time. That is a longstanding rule. If here all we can say is that the error that was claimed was that certain positive evidence was not acknowledged in 1996. So even if that error was corrected and the positive evidence that he had the disability was taken into account, there was still conflicting evidence that he did not have the disability at the time. So even correcting the error, the most he could have ever gotten was considering his claim to be well-grounded and getting claims development assistance. So the error here, fixing that error would not change the outcome. All we can say is, based on the record at the time, which is a requirement of Q, is he should have gotten more assistance. And based on Cook, Cook clearly states that that is not Q because just saying the record is incomplete is not enough to say the outcome would have been different. And the non-reversed part of Hire says the exact same thing. In Hire, the veteran claimed that had the VA fulfilled its duty to assist before adjudicating his claim, the record would have been complete and service connection would have been awarded. And he said the decision was based on an incomplete record. And this court rejected that theory. It said that the veteran could not prove that anything missing that would have been obtained with assistance would have changed the outcome because that was unknown as a future event. And I think BUSTOS stands for the same principle. Even if evidence had been considered, it would simply have put the evidence in equipoise, and we cannot say that would manifestly change the outcome. And that's the same issue here. The error complained of, of not considering certain positive evidence, is not so unequivocal or so undebatable that we can say the veteran would have been entitled to service connection had it been considered. So the Veterans Court did not deviate from the longstanding interpretation of Q, both in the regulation and in this court's precedent. So hearing no further questions from the panel, I will conclude and say if the court finds there's no jurisdiction, it should dismiss or it should affirm because the Veterans Court used the correct standard. Thank you. Thank you, counsel. Mr. Kavanaugh. To be clear, Your Honors, Mr. Smith asked, is not for this court to determine whether there was or wasn't Q. We are simply asking this court to interpret the language of the regulation, specifically the term outcome, and whether outcome does or doesn't refer to a threshold legal determination. And this case is undebatable that based upon the only decision made that the claim was not well grounded, he was not entitled to the duty to assist. So the government's suggestion that the most he could have gotten was what he already got is simply a misstatement of both fact and law. He didn't get the duty to assist because of a board decision in 1995. But what about the fact that the regulation also says that an example of something that is not Q is getting the duty to assist? Because that example is that you can't plead an allegation of clear and unmistakable error on the basis of having been deprived of the duty to assist, that the government didn't assist you enough, that the VA didn't assist you enough. Here, the decision in 1995 was you get nada. There is no duty to assist because the claim you presented was not well grounded. That was the law then. That was wrong law, and Congress corrected that wrong law because Congress recognized that the statutory scheme that they created was intended to assist veterans and that asking the veterans to meet the legal standard of well groundedness before they could get the duty to assist was contrary to the statutory scheme. The only issue that was decided by the board, which because he did not take a direct appeal in 1995, his only remedy is under Q, and therefore the only way that he could demonstrate Q was to show that there was a clear and unmistakable error in denying his claim as not being well grounded. That was the basis for the denial. They never reached the merits. They never decided the merits. So what will be afforded upon revision would be an instruction that the claim was well grounded, and as a well grounded claim, he was entitled to the benefit of the duty to assist. And as Judge Lorry, excuse me, as you pointed out, Judge Lorry, he's been granted the benefit. So when he got the duty to assist, he got the benefit. I'm sorry. I didn't mean to cut you off. Well, I was going to ask you about the assertion by opposing counsel and apparently I mean by the board, that there were mixed facts, and therefore it wasn't manifestly clear that the outcome would have been different. This is a legal question. At the time in 1995, as cited by the board, the question of well groundedness was a legal determination. So it didn't involve the application of law to fact. It involved whether or not the board correctly decided that the claim was not well grounded, and that determination under that legal standard would have been simply dispositive of the fact that the claim was well grounded when the board decision on appeal conceded that there was an equal amount of positive and negative evidence that he had a disability. That was enough to well ground his claim as a matter of law, and therefore he would have been entitled to the duty to assist. So you're not arguing that there was a failure here to provide him with the duty to assist, and that's the basis for Q? That's right. Which would be directly contrary. Would be directly contrary. So unless there's further questions from the panel, thank you very much for your time and consideration.